**In re Anonymous No. 8 D.B. 91**

Disciplinary board docket no. 8 D.B. 91

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

WITHEREL, *Member,* January 13, 1993—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your Honorable Court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

A petition for discipline was filed against [ ], respondent, on September 13, 1991, in which the Office of Disciplinary Counsel, petitioner, alleged six separate charges against the respondent with various violations of the Pennsylvania Rules of Disciplinary Enforcement, Disciplinary Rules of the Code of Professional Responsibility and Rules of Professional Conduct to have occurred. No answer was filed by the respondent.

On October 16, 1991, the matter was referred to Hearing Committee [    ] which was chaired by [    ], Esquire, and included members [    ], Esquire, and [    ], Esquire.

A pre-hearing conference was scheduled for November 18, 1991. A continued pre-hearing conference took place on December 3, 1991. The deposition of [A], Acting Chief Disciplinary Counsel, was held on December 10, 1991. Hearings on the matter were held on December 12, 1991 and December 19, 1991. Charge V of the petition for discipline was dismissed at the hearing on December 12, 1991 upon motion of Office of Disciplinary Counsel. The record was held open until December 23, 1991 to allow the respondent additional time to produce documentary evidence in his defense. Respondent declined to do so and the record was closed. On February 19, 1992, the Office of Disciplinary Counsel filed a brief. Respondent did not file a brief.

On April 8, 1992, the hearings were reconvened to receive evidence on the issue of the type of discipline to be imposed upon respondent. A second hearing on the type of discipline was held, pursuant to a continuance by the Disciplinary Board, on May 12, 1992 to allow respondent to bring in additional evidence. The Office of Disciplinary Counsel filed a memorandum of law on the type of discipline to be imposed. Respondent did not file a memorandum of law.

Hearing Committee [    ] filed its report on June 3, 1992 and recommended that respondent be suspended for one year and one day. Neither the Office of Disciplinary Counsel nor respondent filed a brief on exceptions within the prescribed time.

The matter was adjudicated at the October 23, 1992 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, PA 15219, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement (Pa.R.D.E.), with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules.

(2) Respondent, [    ], was admitted to practice law in the Commonwealth of Pennsylvania on November 24, 1980. (P-8.) During the time relevant to this proceeding, respondent's home address was [    ]. On February 6, 1980, respondent filed a resumption of active status form which listed his office address as [    ]. (P-24.) On September 25, 1991, respondent filed his attorney's annual fee for 1991-92 form (P-25) which listed his new Pennsylvania office address as [    ].

*Charges I and II: The [B] and [C] Matters*

(3) By order dated January 4, 1991, in the case entitled *Office of Disciplinary Counsel v. [Respondent], No. 8 D.B. 91,* file no. [    ], [B] matter, the board ordered that respondent receive an informal admonition administered by disciplinary counsel as provided in Rule 204(a)(6) and Rule 205(c)(7) of the Pa.R.D.E. with costs to be paid by respondent. (P-1.)

(4) By letter dated January 14, 1991, addressed to respondent at [    ], acting chief disciplinary counsel notified respondent that by the conduct specified therein, respondent had been found to commit the following violations of the Rules of Professional Conduct:

(a) R.P.C. 1.3. In that after you had been retained by [B] to incorporate his business, you failed to act with reasonable diligence to pursue the matter despite [B's] frequent complaints and reminders that no progress had been made in the incorporation.

(b) R.P.C. 4.1(a), 8.4(b) and (c). In that you made a false statement of material fact under penalties of perjury on the IRS SS-4 application you signed and submitted on [B's] behalf which attested to the fact that his business had been incorporated when, in fact, you knew it had not. (P-2.)

(5) The January 14, 1991 letter also advised respondent that:

(a) He was scheduled to receive his informal admonition on February 19, 1991 at the district [   ] office in [   ], Pennsylvania.

(b) He had the right pursuant to Pa.R.D.E. 208(a)(6) to request the institution of a formal proceeding in lieu of the administration of the informal admonition.

(c) If he chose not to appear for the informal admonition, he was required to notify the  office of the secretary, in writing, within 20 days after receipt of the notice.

(d) Board Rule §87.52 provided that:

"The neglect or refusal of the respondent to appear for the purpose of informal admonition without good cause shall constitute an independent act of professional misconduct and shall automatically result in the institution of formal proceedings relating to such act of misconduct and to the grievance upon which such informal admonition was to relate." (P-2.)

(6) By letter dated January 17, 1991 addressed to respondent at [   ], acting chief disciplinary counsel notified respondent that by the conduct specified therein,

respondent had been found to commit the following violations of the Rules of Professional Conduct:

(a) R.P.C. 1.3. In that from June 1988 when you were retained by [C] to represent her as a personal representative in the administration of an estate until January 26, 1989 when she discharged you from further employment you failed to take any action on her behalf.

(b) R.P.C. 1.4(a). In that in this period you failed to comply with [C's] reasonable requests for information.

(c) R.P.C. 1.16(d). In that you failed to return to [C] your unearned retainer after she discharged you from further employment and demanded its return. (P-4.)

(7) The January 17, 1991 letter also advised respondent that:

(a) He was scheduled to receive his informal admonition on February 19, 1991 at the district [     ] office in [     ], Pennsylvania.

(b) As a condition precedent to the imposition of the informal admonition, respondent was required to provide documentary proof to the district [     ] Office of Disciplinary Counsel that he had paid either [C] or the client security fund $150 as a refund of his unearned retainer within five days prior to the scheduled informal admonition.

(c) He had the right pursuant to Pa.R.D.E. 208(a)(6) to request the institution of a formal proceeding in lieu of the administration of the informal admonition.

(d) If he chose to do so, he was required by section 87.54 of the board rules to notify the office of the secretary, in writing, within 20 days after receipt of the notice, that he would not appear for the informal admonition.

(e) Board Rule section 87.52 provided that:

"The neglect or refusal of the respondent to appear for the purpose of informal admonition without good cause shall constitute an independent act of professional misconduct and shall automatically result in the institution of formal proceedings relating to such act of misconduct and to the grievance upon which such informal admonition was to relate." (P-4.)

(8) Under cover letter dated February 1, 1991 addressed to respondent at [ ], acting chief disciplinary counsel:

(a) Enclosed his January 14, 1991 letter to respondent with evidence of its receipt at [ ];

(b) Enclosed his January 17, 1991 letter to respondent;

(c) Informed respondent that he was required to appear at the district [ ] office in [ ] on February 19, 1991 for the administration of the informal admonition. (P-5.)

(9) Respondent failed to notify the office of the secretary that he would not appear for the scheduled informal admonition on February 19, 1991. (P-26; P.H. 28-29, 54.)

(10) Respondent failed to provide documentary proof to the district [ ] Office of Disciplinary Counsel that he had paid either [C] or the client security fund $150 as a refund of his unearned retainer within five days prior to the scheduled informal admonition on February 19, 1991. (N.T. I 135; P-26.)

(11) Respondent failed to appear for the scheduled informal admonition on February 19, 1991. (P-26; P.H. 32, 53.)

(12) By letter dated March 28, 1991 addressed to respondent at [ ], acting chief disciplinary counsel:

(a) Enclosed the previous correspondence to respondent.

(b) Notified respondent that the administration of the informal admonition had been rescheduled for April 30, 1991 at the [    ] Office of Disciplinary Counsel.

(13) The letter was sent by certified mail, return receipt requested, and by regular mail. (P-3; N.T. I 104-105.)

(14) The return receipt for the certified mail was returned indicating that the letter was delivered on March 30, 1991 and the signature appears to be [D], respondent's wife's initials (P-3; N.T. I 104-105; depo. 23-24.)

(15) The letter sent by regular mail was not returned thereby indicating that it too had been delivered. (Depo. 27.)

(16) Respondent failed to notify the office of the secretary that he would not appear for the scheduled informal admonition on April 30, 1991. (P-27; P.H. 28-29, 54.)

(17) Respondent failed to provide documentary proof to the district [    ] Office of Disciplinary Counsel that he had paid either [C] or the client security fund $150 as a refund of his unearned retainer within five days prior to the scheduled informal admonition on April 30, 1991. (N.T. I 135.)

(18) Respondent failed to appear for the scheduled informal admonition on April 30, 1991. (P-27; P.H. 29, 57.)

*Charge III: The [E]/[F] Matter*

(19) In the fall of 1987, respondent contracted with [E] to represent [F] a prisoner, in a habeas corpus action. (N.T. II 98, 116, 135; P-6; P.H. 65.)

(20) [E] had met [F] while doing volunteer work for a religious organization and became concerned about the length of his "extraordinary sentence." (N.T. II 24.)

(21) At the time that respondent agreed to represent [F], respondent informed [E] that:

(a) His hourly rate would be $100 per hour (subsequently reduced to $75 per hour).

(b) He required a payment of $7, 500 on an installment basis as a retainer.

(c) He would return any unearned retainer to [E] calculated by deducting his hourly fee for the time he actually expended on the matter following its conclusion. (N.T. II 100; P-6.)

(22) Pursuant to respondent's request, [E] agreed to act as [F's] agent in the representation. (N.T. II 105, 135.)

(23) Pursuant to respondent's request, [E] obtained from [F] and provided to respondent in or around November, 1987 the following information on [F's] case: rap sheets, appellate documents, legal documents prepared by other attorneys, and transcripts of the trial. (N.T. II 100-1.)

(24) [E] made the following payments to respondent to be credited toward his retainer: $500 by check dated November 2, 1987; $500 by check dated November 9, 1987; $500 by check dated December 18, 1987; $500 by check dated December 31, 1987; $200 by check dated March 15, 1988. (P.H. 65-6; stipulation of fact.)

(25) [E] mailed each of the above payments to respondent. (N.T. II 104.)

(26) After he received each payment, respondent called [E], thanked her for the payment, and assured her that he was working on the case (N.T. II 104.)

(27) Respondent used the money received from [E] for the purposes of his law firm or for personal uses. Respondent either deposited the money in his attorney account or cashed the checks or signed them over to other people (N.T. II 183-9.)

(28) Respondent failed to enter his appearance on [F's] behalf in the habeas corpus action in federal district court. (P.H. 81.)

(29) By letter dated August 17, 1988, [E] informed respondent that:

(a) She had discovered that respondent had failed to enter his appearance on [F's] behalf or take any other action.

(b) On behalf of [F] she demanded the return of the trial transcripts she had provided to respondent.

(c) She demanded an accounting of the funds with the return of the unearned retainer. (P-6.)

(30) Respondent failed to respond to this letter and refused to communicate any further with [E]. (N.T. II 106-108.)

(31) Under cover letter dated October 28, 1988, respondent returned [F's] documents to [F]. (P-11.)

(32) From November, 1987 when respondent was retained to represent [F] until October, 1988 when he returned all documents to [F], respondent failed to take any action on his client's behalf. (N.T. II 106-7.)

(33) On August 4, 1989, a judgment was entered against respondent in the action entitled *[E] v. [respondent]*, [　] Municipal Court no. [　] for $1,200 plus court costs and interest for the unearned portion of the fee [E] had paid. (P.H. 92.)

(34) Respondent failed to satisfy this judgment or return any funds to [E]. (N.T. II 111-2; P.H. 94.)

(35) Respondent failed to provide to [E] an accounting of her funds. (N.T. II 144-5.)

*Charge IV: The [G] Matter*

(36) On January 22, 1990 [G] retained respondent to:

(a) Update the corporate books, including the transcription of minutes of various shareholder and director meetings and resolution of [H] a minority owned and operated corporation; and,

(b) Pursue certification of [H] as a minority owned and operated corporation in the following jurisdiction: City of [ ], Commonwealth of [ ], State of [ ], State of [ ] Transportation Department, City of [ ], City of [ ], City of [ ]. (N.T. I 151, 203; P-13; P.H. 97-8.)

(37) At the initial meeting, [G] provided respondent with the corporate books for [H], certification forms for some of the jurisdictions involved and the information necessary to complete the representation. (N.T. I 152-154.)

(38) Respondent agreed to complete the representation within 90 days (N.T. I 154.)

(39) [G] paid respondent his full retainer of $1,000 by February 9, 1990. (N.T. I 155; P-13; P.H. 100.)

(40) From February, 1990 until approximately April, 1990, [G] telephoned respondent several times per week. (N.T. I 157.)

(41) During these telephone conversations, respondent repeatedly assured [G] that the case was proceeding as planned. (N.T. I 157.)

(42) Respondent failed to take the appropriate action to certify [H] as a minority owned business in the agreed jurisdictions. (N.T. I 210.)

(43) In approximately April, 1990, respondent became unavailable. He failed to respond to [G's] telephone calls or to return them. (N.T. I 159-162.)

(44) In August, 1990, [G] met with respondent at respondent's office, at which time respondent returned to [G] his corporate records, none of which had been updated in accordance with the employment contract. (N.T. I 166.)

(45) At that time, respondent promised to make available to [G] the updated minutes and the certifications on the following day. (N.T. 167.)

(46) Respondent failed to return the updated minutes or the certifications to [G] on the following day or thereafter. (N.T. I 167-169.)

(47) In December, 1990, [G] telephoned respondent and demanded the return of the unearned retainer or the completion of the representation. (N.T. I 171.)

(48) By letter dated January 21, 1991, sent both to [   ] and [   ], the addresses listed on respondent's office stationery, [G]:

(a) Discharged respondent from further employment, and

(b) Demanded the return of the unearned retainer and the certifications. (N.T. I 173-176; P-13, P-15, P-15a.)

(49) Respondent failed to return either the certifications or the unearned retainer. (N.T. I 177.)

### Charge VI: The [I] Matter

(50) In September, 1987, [I] paid respondent $1,500 to represent him in a landlord/tenant action against his past landlords, [J] and [K]. (N.T. I 216-7; P.H. 128-9.)

(51) On June 9, 1988, respondent informed [I] that he had filed this action on his behalf and provided

him with a copy of notice of default in the action entitled *[I] v. [J] (sic),* in the [   ] Court of Common Pleas, October Term, 1987, no. [   ]. (N.T. I 219-221; P-17.)

(52) There is no such action filed at the docket number respondent provided to [I]. (P-18.)

(53) On July 22, 1988, respondent informed [I] that a hearing had been scheduled in the matter for September 20, 1988. (N.T. I 221.)

(54) Sometime after September 20, 1988, respondent informed [I] that the hearing had been continued because of illness of the defense counsel. (N.T. I 223.)

(55) In May, 1989, respondent informed [I] that the hearing had been rescheduled for June 22, 1989. (N.T. I 225.)

(56) Subsequently, [I] discovered that no such action had ever been filed. (N.T. I 226.)

(57) On July 25, 1989, respondent filed the landlord/tenant action entitled *[I] v. [J]* in the [   ] County Court of Common Pleas, July Term, 1989, no. [   ]. (P-19.)

(58) On April 5, 1988, [I] paid respondent $150 to represent [L] Design Development Group, in a small claims action against [M] Baptist Church. (N.T. I 226-7; P-28.)

(59) In June, 1988, respondent informed [I] that he had filed a complaint in the [L] matter. (N.T. I 228.)

(60) In response to [I's] demand in the spring of 1989, respondent provided [I] with a statement of claim in the action entitled *[L] Design Development Group v. [M] Baptist Church* which he represented he had filed in the [   ] Municipal Court. (N.T. I 229-230; P-20, P-22.)

(61) In May, 1989, respondent informed [I] that a hearing in the matter was scheduled for June 22, 1989. (N.T. I 232-3.)

(62) On June 22, 1989, [I] discovered that no such hearing was scheduled. (N.T. I 237.)

(63) When [I] questioned respondent about the matter, respondent informed him that the hearing was continued until September, 1989. (N.T. I 237.)

(64) By letter dated September 28, 1989, respondent informed [I] that the [L] statement of claim had been refiled, reinstated and would have a hearing date by November, 1989. (P-20.)

(65) By letter dated September 30, 1989, [I] requested respondent to provide him a copy of the [L] complaint reflecting its docket number. (N.T. I 240.)

(66) Respondent failed to provide [I] with this requested information. (N.T. I 241.)

(67) No action entitled *[L] Design Development Group v. [M] Baptist Church* was ever filed in [ ] Municipal Court. (N.T. I 215.)

## III. CONCLUSIONS OF LAW

Respondent's aforementioned misconduct violated the following Pennsylvania Rules of Disciplinary Enforcement, Disciplinary Rules of the Code of Professional Responsibility and Rules of Professional Conduct:

(a) Pa.R.D.E. 203(b)(2). Willful failure to appear before the Supreme Court, the board or disciplinary counsel for censure, private reprimand or informal admonition.

(b) Pa.R.D.E. 203(b)(3). Willful violation of any other provision of the Enforcement Rules.

(c) Pa.R.D.E. 204(b). Conditions may be attached to an informal admonition or private reprimand. Failure to comply with such conditions shall be grounds for reconsideration of the matter and prosecution of formal charges against the respondent-attorney.

(d) D.R. 6-101(A)(3). A lawyer shall not neglect a legal matter entrusted to him.

(e) D.R. 7-101(A)(1). A lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available means permitted by law and the disciplinary rules.

(f) R.P.C. 1.1. A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation necessary for the representation.

(g) R.P.C. 1.3. A lawyer shall act with reasonable diligence and promptness in representing a client.

(h) R.P.C. 1.4(a). A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(i) R.P.C. 1.15(b). Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(j) R.P.C. 1.16(d). Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for em-

ployment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

(k) R.P.C. 3.2. A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

(1) R.P.C. 8.4(c). It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

The threshold issue before the Disciplinary Board is whether respondent's conduct violated any Disciplinary Rules of the Code of Professional Responsibility or Rules of Professional Conduct.

Under Charges I and II (the [B]/[C] matters) respondent failed to appear for the administration of two informal admonitions. Respondent was given two opportunities to appear, first on February 19, 1991 and then on April 30, 1991. Respondent failed to appear on both occasions. The failure to appear for the administration of an informal admonition violates Pa. R.D.E. 203(b)(2) which states that a willful failure to appear before disciplinary counsel for an informal admonition is grounds for discipline. Also, respondent's failure to abide by a condition of one of the informal admonitions was in violation of Pa.R.D.E. 203(b)(3) and 204.

Respondent contends that he did not receive notice of the administration of the informal admonitions and is therefore without fault. However, the record demonstrates that several letters were sent to respondent

at his last known office address and at his home address informing him of the date, time and place of the administration of the informal admonitions. In particular, the last letter informing respondent of the informal admonitions was sent by disciplinary counsel to respondent's home address by certified mail, return receipt requested, and by regular mail. The receipt was returned with the signature which purports to be respondent's wife. Also, the letter sent by regular mail was never returned indicating that it too had been properly delivered to respondent's home address. Thus, respondent's contention that he did not receive notice of the administration of the two informal admonitions is without merit.

Respondent's failure to appear for the imposition of the informal admonition in the [B] matter and the [C] matter violated Pa.R.D.E. 203(b)(2). In addition, respondent's failure to abide by the condition attached to the [C] informal admonition violated Pa.R.D.E. 203(b)(3) and 204.

Under Charge III (the [E]/[F] matter), respondent agreed with [E] to represent [F] in his habeas corpus action. Respondent required a payment of $7,500 on an installment basis as a retainer. [E] paid respondent $2,200 toward his retainer. Respondent failed to enter an appearance on behalf of [F] in his habeas corpus action. [E] demanded the return of the trial transcript that she provided to respondent and an accounting of the funds with the return of the unearned retainer. Respondent eventually returned [F's] documents to him. During the period which respondent was retained to represent, [F], he failed to take sufficient and diligent action on [F's] behalf. In the action entitled *[E] v. [Respondent]*, a judgment was entered against respondent for $1,200 plus court costs and interest for the unearned

portion of the fee [E] paid. Respondent failed to return any funds to [E] or provide an accounting of her funds.

Since respondent's conduct in this matter began before and continued after the adoption of the Pennsylvania Rules of Professional Conduct, the allegations are under the Pennsylvania Code of Professional Responsibility and the Rules of Professional Conduct.

Disciplinary Rule 6-101(A)(3) prohibits an attorney from neglecting a legal matter entrusted to him. Disciplinary Rules 7-101(A)(1) and (2) prohibit an attorney from intentionally failing to seek the lawful objectives of a client or to carry out an employment contract. Rules of Professional Conduct 1.1 and 1.3 prohibit an attorney from failing to provide competent and diligent representation. Rules of Professional Conduct 3.2 prohibits an attorney from failing to expedite litigation.

Respondent violated the above disciplinary rules and Rules of Professional Conduct by his failure from November, 1987 to October, 1988 to take sufficient action on behalf of his client, [F].

Rule of Professional Conduct 1.15(b) states that a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

By letter dated August 17, 1988, [E] asked respondent to return the transcripts she had given him and the funds he accepted from her. Respondent never returned any of the money, nor did he send a bill for his services, or an accounting of the way the funds had been used. Respondent's conduct therefore violated Rule 1.15(b).

Charge IV (the [G] matter) dealt with [G's] retention of respondent in January, 1990 to update and put in

order the corporate books of [H] Services Unlimited. [G] also engaged respondent to pursue certification of [H] as a minority/female owned company in several areas. Respondent failed to certify [H] as a minority owned business. Beginning in April, 1990, respondent failed to respond to [G's] telephone calls or return them. Respondent failed to update [G's] corporate records. In December, 1990, [G] telephoned respondent and demanded the return of the unearned retainer or the completion of the representation. By letter dated January 21, 1991, [G] discharged respondent from further employment and demanded the return of the unearned retainer and the certifications. Respondent failed to return the unearned retainer and failed to provide the certifications.

Rules of Professional Conduct 1.1 and 1.3 require an attorney to provide competent and diligent representation to a client. Respondent violated these rules by his failure to update his client's corporate books and to obtain minority certifications for his client's corporation.

Rule 1.4(a) requires an attorney to keep a client informed of the status of the matter and to promptly comply with reasonable requests for information. Respondent's failure to respond to or return [G's] telephone calls and his unavailability to his client during most of the representation constitutes a violation of Rule 1.4(a).

Rule 1.16(d) requires an attorney to return to his client the unearned portion of his retainer fee upon termination of the representation. Respondent's failure to return to [G] his retainer of $1,000 is a clear violation of Rule 1.16(d).

Rule 8.4(c) prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrep-

resentation. From February to April, 1990, respondent spoke to [G] frequently. During these discussions, respondent repeatedly assured [G] that the matter of representation was proceeding as planned. In fact, however, respondent was taking no action on behalf of his client.

In addition, numerous excuses were offered by respondent for why the work was never completed. These excuses included the malfunctioning of a word processor, the misplacing of files, the inability to find a yellow pad upon which respondent wrote initial information, the failure of respondent's secretary to mail completed forms for the certification, and the providing of a package of respondent's completed work for [G] to a mysterious messenger who never appeared again.

Respondent's repeated assurances and his numerous excuses demonstrate blatant misrepresentations by respondent in violation of Rule 8.4(c).

Under Charge VI (the [I] matter), [I] retained respondent to bring a landlord/tenant action against his former landlords, [J and K], sometime during or prior to September of 1987. Respondent did not file the action until July 25, 1989, almost two years later. This excessive delay evidences a lack of competent and diligent representation and a failure to expedite litigation in violation of Rules 1.1, 1.3 and 3.2.

Furthermore, respondent deliberately misled [I] concerning the status of the action when he presented a document to [I] to show a lawsuit had been filed in 1987 when no lawsuit had actually been filed. [I] testified that respondent had given him this document in June of 1988 and said he had filed it. [I] also testified that respondent made various representations to him in 1988 about hearings in the matter which were postponed and rescheduled. During this time period, no lawsuit had actually been filed. This conduct is in vio-

lation of Rule 8.4(c) which prohibits conduct involving dishonesty, fraud, deceit or misrepresentation.

In another matter, [I] paid respondent to represent [L] Design Development Group in a small claims action against the [M] Baptist Church. Respondent wrote a demand letter to the church, but never filed an action in the municipal court. Respondent represented to [I] that he filed a statement of claim in the [ ] Municipal Court. This statement was false. In addition, respondent misrepresented to [I] that hearings had been scheduled and postponed.

Respondent's failure to file a claim in the [L] matter constituted a lack of competent and diligent representation and a failure to expedite litigation in violation of Rules 1.1, 1.3 and 3.2. In addition, respondent violated Rule 1.4(a) by his failure to keep [I] informed about the status of the [L] matter and to promptly comply with reasonable requests for information. Lastly, respondent's misrepresentation to [I] regarding the status of the [L] matter violated R.P.C. 8.4(c) which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

Having established respondent's clear and convincing violations of the disciplinary rules and Rules of Professional Conduct, the board must now decide the appropriate discipline to impose upon the respondent. "The primary purpose of our system of lawyer discipline is to protect the public from unfit attorneys and to maintain the integrity of the legal system." *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 80, 526 A.2d 1180, 1186 (1987).

The common thread through these charges was respondent's general neglect of his clients' matters. This neglect was then followed by misrepresentations regarding the statuses of the various matters.

The extensiveness of respondent's neglect evidences his incognizance of his responsibilities as an attorney. When a client retains an attorney, he or she entrusts that attorney with matters that are of the utmost importance to that client. It is the lawyer's ethical and professional duty to act competently and diligently on his client's behalf and to keep his client informed with truthful information regarding the matter. Regardless of respondent's initial intentions when he agreed to represent his clients, he did not conduct himself in a professional manner when he grossly neglected his clients' matters and covered up his neglect with numerous misrepresentations.

Furthermore, respondent's failure to appear for the administration of two informal admonitions demonstrates his disrespect of lawyer disciplinary matters in this state. It also further evidences respondent's general neglect of legal matters, on this occasion his own.

When neglect of a client's matter appears to be an isolated instance and corrective steps are taken to prevent a recurrence, the usual discipline recommended as appropriate in the situation is the imposition of an informal admonition. Yet, where the neglect does not appear to be isolated, and where there is a lack of mitigating circumstances, the recommended discipline is usually more severe. *In re Anonymous Nos. 43 D.B. 87 and 83 D.B. 87,* 3 D.&C.4th 598 (1988). In this matter, respondent's neglect was prevalent, there was a lack of mitigating circumstances, and there were aggravating circumstances in the form of respondent's misrepresentations to clients. Furthermore, instead of taking corrective measures, respondent has yet to refund clients for unearned retainers.

In order to impress upon respondent the seriousness of his multiple violations of the disciplinary rules and

the Rules of Professional Conduct, the board is of the adamant opinion that respondent should be suspended for a period of one year and one day. The board believes that this discipline will give respondent sufficient time to reflect upon his past misconduct and to develop the means and resolve to assure that his past misconduct is never repeated.

Furthermore, a suspension for a period greater than a year will require respondent to petition for reinstatement. In order to be reinstated, respondent will be required to show that he has the moral qualifications, competency and learning in the law required of the members of the Bar of this Commonwealth.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [ ], be suspended from the practice of law for a period of one year and one day. The board further recommends that, prior to filing a petition for reinstatement, respondent must provide proof that he has returned the unearned retainers paid to him by [C], [E] and [G] or that he has paid such monies to the client security fund. Respondent must also present proof that he has repaid the client security fund for its refund of fees to [I].

In addition, the board recommends that the court direct that respondent pay all necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Ms. Flaherty did not participate in the adjudication.

## ORDER

And now, July 8, 1993, upon consideration of the report and recommendations of the Disciplinary Board

dated January 13, 1993, it is hereby ordered that [respondent] be and he is suspended from the Bar of this Commonwealth for a period of one year and one day and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Prior to filing a petition for reinstatement, respondent must provide proof that he has returned the unearned retainers paid to him by three of his clients or that he has paid such monies to the Pennsylvania Lawyers Fund for Client Security; respondent must also present proof that he has repaid the Pennsylvania Lawyers Fund for Client Security, for its refund of fees to another client.